UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| | : | |
| RGA REINSURANCE COMPANY, | : | |
| | : | CIVIL ACTION NO. 3:24-cv-01642-SRU |
| Plaintiff, | : | |
| | : | **JURY TRIAL REQUESTED** |
| v. | : | |
| | : | |
| ALLIANCE-ONE SERVICES, INC., | : | September 16, 2025 |
| | : | |
| Defendant, | : | |
| Third-Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| PENSION BENEFIT INFORMATION, | : | |
| LLC d/b/a PBI RESEARCH SERVICES. | : | |
| | : | |
| Third-Party Defendant. | : | |

## **THIRD-PARTY COMPLAINT OF DEFENDANT ALLIANCE-ONE SERVICES, INC.**

Pursuant to Federal Rule of Civil Procedure 14, Defendant and Third-Party Plaintiff Alliance-One Services, Inc. ("Alliance-One"), by and through its attorneys, hereby files this Third-Party Complaint against Pension Benefit Information, LLC d/b/a PBI Research Services ("PBI").

### **Nature of the Action**

1.    In this third-party action, Alliance-One asserts claims for contractual indemnification, common-law indemnification, breach of contract, and negligence-against PBI

arising out of the same operative facts alleged in the underlying action filed by Plaintiff RGA Reinsurance Company ("RGA") against Alliance-One (the "Underlying Action[1]").

2.    The Underlying Action arises out of a long-standing service agreement, originally executed in 2000 and subsequently amended multiple times, under which Alliance-One agreed to provide third-party administration and operational services to RGA, a reinsurer of life, annuity, and health policies. Among other things, the agreement and its addenda requires Alliance-One to provide death record verification services as part of its third-party administration duties. The agreement also expressly authorizes Alliance-One to engage subcontractors of its choosing—such as  PBI—to perform those services. Alliance-One engaged PBI for that purpose, and PBI was responsible for helping process RGA's data in connection with death record verification.

3.    RGA now contends that Alliance-One breached the agreement and its addenda by failing to indemnify and reimburse RGA for expenses it allegedly incurred following a June 2023 data security incident (the "Incident"). The Incident occurred when a Russian-based ransomware group exploited vulnerabilities in PBI's file transport systems. The Incident was confined to PBI's systems and did not affect Alliance-One's systems. Alliance-One's involvement was limited to using PBI's file transfer portal to transmit and receive files in support of the contracted death record verification services.

4.    As a result of the Incident, files belonging to RGA were allegedly compromised, including files containing sensitive personal information ("PII") of RGA's customers. RGA asserts

---

[1] For the sake of clarity, the "Underlying Action" refers to Civil Action No. 3:24-cv-01642-SRU, filed by RGA against Alliance-One on October 15, 2024 (ECF 1), currently pending before this Court. RGA filed an Amended Complaint (the "Amended Complaint") on December 23, 2024 (ECF 17). On January 6, 2025, Alliance-One filed its motion to dismiss the Amended Complaint (ECF 20). On August 19, 2025, this Court held a hearing on Alliance-One's motion to dismiss and denied the motion.

that it incurred costs to address the exposure of PII, such as notifying affected individuals and paying for credit monitoring services.

5.    Alliance-One expressly denies liability to RGA. Under the governing agreements between Alliance-One and RGA, Alliance-One cannot be held responsible for data breaches that are not attributable to its own contractual duties—all of which Alliance-One fully complied with. Alliance-One further denies liability because RGA failed to mitigate its alleged damages, including by refusing PBI's no-cost credit monitoring solution, which Alliance-One, on behalf of PBI, promptly offered to RGA upon learning of the Incident. Alliance-One further denies liability for RGA's inflated and unnecessary legal costs, which were unreasonably disproportionate in a matter where, to Alliance-One's knowledge, no third-party claims or regulatory actions were ever asserted against RGA.

6.    Nevertheless, to the extent any liability is imposed on Alliance-One in the Underlying Action, such liability arises directly and exclusively from PBI's acts, omissions, and breaches of the contractual and common-law duties it owed to Alliance-One.

7.    As recognized by all parties involved, including RGA itself, the Incident occurred exclusively on PBI's systems and did not affect Alliance-One's systems. Responsibility for maintaining and safeguarding those systems rested with PBI alone, and its failure to do so directly gave rise to the Incident.

8.    At the time of the Incident, PBI had made various contractual promises to Alliance-One (through its parent, DXC Technology Services LLC ("DXC")) that it would safeguard the information—including RGA's PII—entrusted to it by Alliance-One, on behalf of RGA. To that end, Alliance-One and PBI operated under two sets of agreements: (i) purchase orders

incorporating the DXC Purchase Order Terms and Conditions ("POTAC"), and (ii) a January 23, 2023 Data Privacy and Cybersecurity Requirements letter (the "January 2023 Letter")(collectively the "Agreements").

9.      Under these Agreements, PBI represented, among other things, that it would maintain a quality system; warrant that its services were free from vulnerabilities and malware; implement a comprehensive information security program consistent with industry standards; comply with applicable privacy laws governing the collection, storage, handling, processing, and transfer of PII; use industry-standard encryption tools; conduct periodic risk assessments to identify reasonably foreseeable internal and external risks to the security and integrity of Alliance-One's data; perform annual penetration testing and biannual vulnerability testing; and promptly notify Alliance-One of any cybersecurity incidents.

10.     Despite making those representations, upon information and belief, PBI did not implement or enforce safeguards adequate to protect the confidentiality, integrity, and accessibility of the data entrusted to it, including RGA's PII. Nor did PBI, upon information and belief, conduct the level of vulnerability assessments required to detect and prevent the type of ransomware attack that ultimately compromised its systems. To the extent these systems failed to adhere to the industry standards it had expressly committed to follow, PBI's failures constitute material breaches of both the POTAC and the January 2023 Letter, as PBI would not have delivered services in the manner promised and failed to uphold its contractual duties to safeguard sensitive information.

11.     Moreover, via the January 2023 Letter, PBI expressly agreed to indemnify Alliance-One for such failures. Accordingly, PBI owes damages to Alliance-One in an amount to be

determined at trial, but not less than $550,000, and further owes contractual and common-law indemnification to the extent RGA prevails against Alliance-One in the Underlying Action.

## Parties

12.      RGA  is the Plaintiff in the Underlying Action and a corporation created and existing under the laws of the State of Missouri and headquartered in Chesterfield, Missouri.

13.      Alliance-One is a Defendant and Third-Party Plaintiff in the Underlying Action, and a Delaware corporation with its principal place of business in Ashburn, Virginia. Alliance-One is authorized to do business in Connecticut, is actively registered with the Connecticut Secretary of State, and regularly conducts business and delivers services in Connecticut.

14.      Defendant PBI is a Third-Party Defendant in the Underlying Action and a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota. PBI provides services throughout the United States, including services performed in Connecticut.

## Jurisdiction and Venue

15.      Plaintiff filed the Underlying Action in this jurisdiction by invoking the invocation of the forum selection clause in the underlying agreement between Plaintiff and Alliance-One which provides that "jurisdiction shall be … in Connecticut for actions filed by or an on behalf of Client Company…"

16.      This Court has subject-matter jurisdiction over this third-party action pursuant to 28 U.S.C. § 1367(a) because the claims asserted herein form part of the same case or controversy

as the Underlying Action, *RGA Reinsurance Co. v. Alliance-One Services, Inc.*, Case No. 3:24-cv-01642 (SRU).

17.    This Court has personal jurisdiction over PBI under Connecticut's longarm statute because, at all relevant times, PBI purposefully transacted business with Alliance-One by providing services that Alliance-One delivered in Connecticut, including to RGA. The claims asserted in this third-party action arise directly out of those services. Upon information and belief, at least some of the files compromised in the Incident contained PII belonging to individuals residing in Connecticut, further establishing this Court's jurisdiction over PBI.

18.    PBI's conduct caused foreseeable injury in Connecticut. The Incident that occurred on PBI's systems led RGA to sue Alliance-One in this Court, and the alleged damages are being pursued in Connecticut through the underlying litigation. The resulting harm in this forum makes the exercise of jurisdiction over PBI consistent with due process.

19.    Venue of the Underlying Action was placed in this Court due to Plaintiff's invocation of the forum selection clause and reliance on 28 U.S.C. § 1391(b)(1) and (3) in the agreement. The commencement of this third-party action does not affect venue. Moreover, the venue is independently proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this District.

## **Factual Background**

A. **The Governing Agreement Between Alliance-One and RGA.**

20.    On April 5, 2000, MYND Corporation ("MYND") and Aurora National Life Assurance Company ("Aurora") entered into a service agreement (the "Service Agreement"),

pursuant to which MYND agreed to provide administrative services for Aurora's life insurance and annuity policies. The Service Agreement was subsequently amended on multiple occasions to reflect changes in the parties' relationship.

21.    Through a series of corporate transactions and assignments, Alliance-One succeeded to MYND's rights and obligations as service provider, and RGA succeeded to Aurora's position as client under the Service Agreement.

22.    On June 17, 2021, the Service Agreement was amended in two respects.

23.    First, Alliance-One and RGA executed Addendum No. 6, which supplemented the existing Section 10 of the Service Agreement ("Addendum No. 6"). Second, Alliance-One and RGA executed a separate Privacy and Data Security Addendum (the "Data Security Addendum" or the "DSA"). Together, the Service Agreement and these addenda (collectively, the "Agreement") establish the framework for the parties' relationship, including their respective rights and obligations concerning confidentiality, the handling and security of RGA's data, and indemnification and reimbursement.

24.    Although the original Service Agreement does not address Alliance-One's cybersecurity and confidentiality obligations concerning RGA's data, Section 21 of Addendum No. 6—by supplementing Section 10 of the Service Agreement—establishes limited cybersecurity duties. Specifically, it requires Alliance-One to: (a) maintain and enforce rules and policies to protect against unauthorized access to or disclosure of confidential information; (b) provide written instructions to representatives and subcontractors to safeguard confidential information; (c) maintain a written comprehensive information security program consistent with laws applicable to Alliance-One; (d) instruct representatives not to disclose confidential information to third parties

7

without RGA's prior consent; and (e) notify RGA immediately of any actual or suspected disappearance or unauthorized acquisition of confidential information.

25.    Elsewhere in the Service Agreement, Section 8.02 provides that, except as otherwise expressly stated, Alliance-One is obligated to indemnify and hold RGA harmless only for damages or claims arising out of a breach of specified contractual provisions—including Section 10, which, as explained above, was expressly supplemented by Addendum No. 6.

26.    Upon execution of Addendum No. 6, Alliance-One complied with each and every obligation enumerated in Section 21 of that amendment.

27.    Second, on June 17, 2021, the parties executed the DSA, which was annexed as Exhibit N to the Service Agreement. Section 21 of Addendum No. 6 expressly incorporates the DSA and requires Alliance-One's compliance with its provisions.

28.    The DSA confirms that Alliance-One was permitted to use subcontractors, such as PBI, to perform services for RGA, including death record verification.

29.    At the same time, the DSA imposes additional but limited obligations on Alliance-One in connection with its handling of RGA's data, particularly where that data is shared with subcontractors such as PBI. These obligations include:

   a.  DSA § 2.3 (Security): requiring that Alliance-One implement and maintain technical, physical, and organizational safeguards to protect RGA's data;

   b.  DSA § 2.4 (Confidentiality): permitting Alliance-One to share data with its subcontractors, while obligating it to indemnify RGA only for subcontractor's improper use or disclosure of confidential information;

8

      c.  DSA § 2.5 (Supplier Personnel): requiring Alliance-One, before granting subcontractors access to RGA data, to conduct background checks, inform subcontractors of confidentiality obligations, provide appropriate training, and ensure subcontractors were bound by confidentiality commitments at least as strict as those binding Alliance-One;

      d.  DSA § 2.7 (Breach Response): requiring Alliance-One to reimburse RGA for breach-related expenses only to the extent caused by acts or omissions of Alliance-One or its subcontractors that violated the obligations defined in § 2.5; and

      e.  DSA § 3 (Indemnification): requiring Alliance-One to indemnify RGA for third-party claims or losses only where caused by Alliance-One's failure to comply with its obligations under the DSA.

30.    Contrary to RGA's allegations throughout its pleadings against Alliance-One, these limited provisions underscore that neither Addendum No. 6 nor the DSA imposed on Alliance-One any general obligation to monitor or oversee the internal cybersecurity systems of subcontractors such as PBI, nor did they require Alliance-One to insure RGA against every potential data breach. The Incident alleged by RGA arose entirely from PBI's systems, which Alliance-One has no duty to control under the Agreement.

**B.  Alliance-One's Engagement of PBI.**

31.    Since at least 2014, Alliance-One has relied on PBI's services to fulfill certain obligations to RGA, particularly with respect to death record verification. Rather than contracting in its own name, Alliance-One typically relied on its parent company, DXC, to execute agreements with PBI that expressly extended to DXC's affiliates and subsidiaries, including Alliance-One.

This contracting structure was consistent with the Service Agreement and, following execution of the DSA in June 2021, expressly authorized Alliance-One's use of subcontractors such as PBI.

32.     Under these arrangements, PBI typically provided data-matching and verification services designed to identify whether insured individuals were deceased. PBI processed information supplied by Alliance-One through PBI's transfer portal and compared it against death records, then returned results that Alliance-One used to administer policies and fulfill its contractual obligations to RGA. In later years, PBI also provided related services such as address verification and periodic death audit reviews.

33.     At the time of the June 2023 Incident, Alliance-One (through DXC) and PBI were operating under two active purchase orders (collectively, the "Purchase Orders"): (a) Purchase Order C100058226 valued at $2,100, covering January 1, 2023 through December 31, 2023, for address verification services; and (b) Purchase Order C100066869, valued at $36,000, covering April 1, 2023 through March 31, 2024, for death audit services.

34.     Alliance-One timely and fully paid for services rendered under the Purchase Orders.

35.     Each Purchase Order specifically identified Alliance-One as the recipient of services and PBI as the supplier. Both Purchase Orders also contained the following express language:

> "Each Purchase Order placed by DXC Technology Services LLC (DXC) or an affiliate or subsidiary of DXC, for goods and/or services is subject to DXC Standard Purchase Orders Terms & Conditions (POTAC) and the terms of the applicable Purchase Order. Supplier agrees to be bound by such terms by accepting the Purchase Order, delivering the goods, and/or performing the services."

36.     By accepting and performing under the Purchase Orders, PBI expressly agreed to comply with the incorporated DXC Purchase Order Terms and Conditions (United States) ("POTAC") for the benefit of DXC and its affiliates, including Alliance-One.

C.   **Relevant Provisions of the DXC POTAC.**

37.     The POTAC imposes detailed quality, security, and confidentiality obligations on PBI.

38.     Specifically, Section 5 (Quality) requires PBI to maintain a quality system ensuring that all products and services provided under the purchase orders meet the standards specified in PBI's quality system—requiring robust internal controls to ensure deliverables are accurate, reliable, and secure.

39.     Section 6 (Warranty) requires PBI to warrant that all software, services, and products it provided will be free from malware, known security vulnerabilities, and defects in design, material, or workmanship, and that all services will be performed in a professional manner. This provision places the responsibility squarely on PBI to ensure that the systems it uses to process and transfer data received from Alliance-One are secure, reliable, and professionally maintained.

40.     Section 11.4 obligates PBI to develop, implement, and maintain a comprehensive information security program incorporating industry-standard safeguards. That program is required to protect Alliance-One's data—and, by extension, its customers' data—against security breaches and to ensure that PBI's services and products are delivered securely.

41.    Section 19.3 (Compliance with Data Privacy Laws) requires PBI to comply with all applicable data privacy laws governing the collection, storage, use, transfer, security, or processing of PII.

42.    Section 19.5 (Safeguards) mandates that PBI develop, implement, maintain, and use administrative, technical, and physical safeguards, as deemed appropriate by DXC and/or Alliance-One, to preserve the security, integrity, and confidentiality of personal information and to prevent unauthorized use or disclosure, as well as accidental or unlawful destruction, loss, or alteration. Such safeguards are required to meet all applicable legal standards and meet or exceed accepted industry security standards, including ISO 27001/27002.

43.    Collectively, these provisions create a comprehensive framework of quality, security, and data protection obligations. Their purpose is to ensure that PBI bears responsibility for handling, processing, and safeguarding the data provided to it by Alliance-One.

### D.  January 23, 2023 Data Privacy and Cybersecurity Letter

44.    In addition to the Purchase Orders and the incorporated POTAC, DXC—on behalf of itself and its affiliates, including Alliance-One—issued the January 2023 Letter to PBI.

45.    The January 2023 Letter notified PBI that numerous cybersecurity and privacy laws apply to Alliance-One and its business partners, including PBI, due to their processing of PII for insurance company clients. The January 2023 Letter states it supplements, and does not replace, PBI's existing contractual obligations under the governing agreements and purchase orders and will be incorporated into those agreements.

46.    The January 2023 Letter also sets out specific privacy and security requirements for PBI. Among other things, it requires PBI to further develop, implement, and regularly review its information security programs; encrypt PII using industry-standard encryption tools; conduct periodic risk assessments; perform annual penetration testing and biannual vulnerability testing; and promptly notify DXC (and, by extension, Alliance-One) of any cybersecurity incident within 48 hours, including providing full cooperation and details of remedial measures.

47.    Critically, the January 2023 Letter includes the following indemnification provision:

> "Supplier shall indemnify and hold harmless DXC for all losses suffered or incurred by, awarded against or agreed to be paid by DXC, or its affiliate, arising from or in connection with any breach by Supplier of its obligations under this letter agreement or the Agreements."

48.    The January 2023 Letter was sent to PBI on January 23, 2023, thus informing PBI of these requirements and indemnification terms. By continuing to perform services after receiving the letter without objection, PBI accepted and operated under those obligations. PBI had also received similar letters in prior years, which further placed it on notice of its privacy and security obligations.

## E.  The Incident.

49.    On June 3, 2023, PBI notified Alliance-One of a potential data breach involving PBI's MOVEit file transfer system.

50.    On June 13, 2023, PBI further advised Alliance-One that two files containing RGA's customer data had been impacted.

51.     The Incident was subsequently confirmed to be part of a worldwide ransomware attack perpetrated by the "Clop" cybercriminal group, which exploited a vulnerability in the MOVEit file transfer software. That exploit compromised PBI's systems.

52.     The data breach occurred solely on PBI's systems—not on Alliance-One's. Alliance-One did not design, maintain, or monitor PBI's MOVEit platform that the Clop ransomware group exploited. That platform resided on PBI's systems and was merely used by Alliance-One, pursuant to its agreements with PBI, to transmit RGA's data so that PBI could perform death-matching services. Alliance-One did not have any contractual or operational obligation to oversee or secure PBI's systems; those responsibilities, controls, and expertise rested exclusively with PBI.

53.     Upon learning of the Incident, Alliance-One promptly notified RGA and, on or about June 15, 2023, further advised that certain RGA customer data had been affected as a result of the Incident.

54.     Within days of the Incident, Alliance-One, on behalf of PBI, offered RGA credit monitoring services at no cost through Kroll Monitoring, a well-regarded industry provider, and reiterated that offer as a courtesy and in good faith. Alliance-One extended this offer (on behalf of PBI) not out of any contractual obligation or admission of fault, but in recognition of its long-standing business relationship with RGA. RGA failed to respond to the offer and instead retained its own provider at substantially higher cost.

55.     On June 29, 2023, RGA demanded indemnification from Alliance-One for response expenses it had chosen to incur, including nearly $400,000 in vendor fees and more than $160,000 in outside legal fees. When Alliance-One declined to accede to these unreasonable demands, RGA

filed the Underlying Action on October 15, 2024, alleging that Alliance-One breached the Agreement by failing to indemnify RGA in connection with the Incident. The entirety of RGA's basis for seeking indemnification and reimbursement rests on its theory that Alliance-One somehow violated the Agreement by failing to monitor and oversee PBI. As shown above, however, the Agreement imposes no such obligation on Alliance-One. But in any event,  if the Court is to find any liability against Alliance-One in the Underlying Action, that liability must be imputed to PBI because of PBI's own breaches and failures owed to Alliance-One.

### F. **PBI's Breaches.**

56.    The Incident—resulting in unauthorized access to RGA's confidential information, including PII, on PBI's systems—directly implicate PBI's obligations under the Purchase Orders, the incorporated POTAC, and the January 2023 Letter.

57.    Upon information and belief, PBI failed to maintain a quality system sufficient to ensure its services met the standards required by POTAC § 5. A properly designed and maintained quality system could have identified and addressed vulnerabilities in PBI's MOVEit environment before the Clop ransomware group could exploit them.

58.    PBI also breached the warranties in POTAC § 6 by delivering services that, upon information and belief, were not free from known security vulnerabilities or malware and by failing to perform services in a professional manner—failures that could have enabled malicious actors to gain unauthorized access to sensitive data.

59.    Upon information and belief, PBI failed to develop, implement, and maintain a comprehensive information-security program with industry-standard safeguards, as mandated by

POTAC § 11.4. Had PBI adopted safeguards consistent with ISO 27001/27002, the ransomware attackmight not have penetrated its file-transfer systems in the manner it did.

60.      Upon information and belief, PBI also failed to comply with applicable data-privacy laws, in violation of POTAC § 19.3, because its systems lacked the protections necessary to prevent the Incident.

61.      Upon information and belief, PBI further failed to develop, implement, and maintain the administrative, technical, and physical safeguards required by POTAC § 19.5 sufficient to stop the Incident. PBI's safeguards provided inadequate to preserve the security, integrity, and confidentiality of personal information processed on behalf of Alliance-One and RGA.

62.      As a direct and foreseeable result of these breaches, PBI's systems were compromised during the MOVEit ransomware attack, and files containing RGA's customer data—data that had been provided to PBI by Alliance-One while performing contracted services—were exposed. Had PBI fulfilled its contractual obligations, including duties to maintain a quality system, warrant services free from vulnerabilities, implement a comprehensive information-security program, apply appropriate safeguards, and comply with the January 2023 Letter, the RGA data entrusted by Alliance-One would not have been compromised.

63.      By failing to honor its contractual and common-law obligations to Alliance-One, PBI is liable to Alliance-One for damages and must indemnify Alliance-One against any liability imposed in the Underlying Action.

## Claims for Relief

### Count I – Breach of Contract (Against PBI)

64.     Alliance-One repeats and realleges the allegations above as though fully set forth herein.

65.     The Purchase Orders are valid and binding contracts between DXC (for itself and its affiliates, including Alliance-One) and PBI, and each expressly incorporates the POTAC. By their terms, these contracts bound PBI to DXC and its affiliates, including Alliance-One.

66.     PBI materially breached multiple provisions of the POTAC, including but not limited to: § 5 (Quality), by failing to maintain a system adequate to ensure services were accurate, reliable, and secure; § 6 (Warranty), by providing services subject to vulnerabilities and failing to perform them in a professional manner; § 11.4 (Information Security), by failing to implement a comprehensive information security program with industry-standard safeguards; § 19.3 (Compliance with Data Privacy Laws), by failing to comply with applicable statutory data-security requirements; and § 19.5 (Safeguards), by failing to maintain administrative, technical, and physical safeguards appropriate to the sensitivity of the personal information entrusted to it.

67.     The January 2023 Letter further supplements PBI's obligations to DXC and its affiliates, including Alliance-One. It requires PBI to, among other things: develop, implement, and review information-security programs; encrypt personally identifiable information using industry-standard encryption tools; perform periodic risk assessments and access-control reviews; and provide notice of any cybersecurity incident within 48 hours, together with cooperation and remedial measures.

17

68.     Upon information and belief, PBI failed to comply with the January 2023 Letter's requirements, including by failing to conduct adequate testing and risk assessments.

69.     As a direct and proximate result of PBI's breaches of both the POTAC and the January 2023 Letter, PBI's systems were compromised during the June 2023 MOVEit ransomware attack. Files transmitted by Alliance-One to PBI containing RGA's customer data and PII were exposed, and Alliance-One now faces potential liability in the Underlying Action.

70.     Accordingly, Alliance-One is entitled to damages from PBI in an amount to be determined at trial, but in no event less than the damages RGA seeks to recover from Alliance-One in the Underlying Action—alleged to exceed $550,00.

## Count II – Contractual Indemnification (Against PBI)

71.     Alliance-One repeats and realleges the allegations above as though fully set forth herein.

72.     The January 2023 Letter contains an express indemnification provision stating: "Supplier shall indemnify and hold harmless DXC for all losses suffered or incurred by, awarded against or agreed to be paid by DXC, or its affiliate, arising from or in connection with any breach by Supplier of its obligations under this letter agreement or the Agreements."

73.     Alliance-One is an affiliate of DXC within the meaning of that provision and is therefore a direct beneficiary of PBI's indemnification obligations.

74.     Any liability imposed on Alliance-One in the Underlying Action would arise solely from PBI's breaches of its obligations under the incorporated POTAC and the January 2023 Letter.

75.    Accordingly, Alliance-One is entitled to contractual indemnification from PBI for the full amount of any judgment, award, or settlement Alliance-One may be required to pay to RGA, together with associated costs and expenses.

### Count III – Common-Law Indemnification (Against PBI)

76.    Alliance-One repeats and realleges the allegations above as though fully set forth herein.

77.    If RGA obtains any recovery against Alliance-One in the Underlying Action, such recovery will stem from PBI's own negligence, wrongful conduct, and breaches of duty—not from any fault, omission, or breach by Alliance-One.

78.    PBI had exclusive responsibility and control over the design, maintenance, and security of its MOVEit file transfer environment and related systems, which were the sole source of the Incident.

79.    Alliance-One neither knew, nor reasonably could have known, of PBI's failures, and it did not actively participate in or contribute to the conduct that led to the Incident.

80.    Under principles of common-law indemnification, PBI must reimburse Alliance-One for any sums that Alliance-One is compelled to pay to RGA because of PBI's acts or omissions.

### Count IV – Negligence (Against PBI)

81.    Alliance-One repeats and realleges the allegations above as though fully set forth herein.

82.     PBI owed Alliance-One a duty to exercise reasonable care in performing services on its behalf, including by implementing and maintaining adequate safeguards, cybersecurity protections, and data-privacy controls to prevent unauthorized access to sensitive information entrusted to it by Alliance-One.

83.     Upon information and belief, PBI breached that duty by, among other things, failing to adopt sufficient safeguards, conduct adequate penetration and vulnerability testing, maintain appropriate access controls, and/or respond appropriately to known cybersecurity risks to prevent the Incident.

84.     PBI's failures directly resulted in the Incident and the exposure of RGA's confidential data and PII supplied through Alliance-One.

85.     PBI's failure to satisfy its duty of care was the direct and proximate cause of the damages RGA now seeks from Alliance-One in the Underlying Action.

86.     To the extent Alliance-One is held liable to RGA, PBI is liable in tort to Alliance-One for all resulting damages.

### Prayer for Relief

WHEREFORE, Alliance-One respectfully demands judgment against PBI as follows:

A. Count I – Breach of Contract: Awarding contractual damages arising from PBI's breaches of the POTAC and the January 2023 Letter;

B.  Count II – Contractual Indemnification: Awarding full indemnification under the January 2023 Letter for any judgment entered against, or settlement paid by, Alliance-One to RGA;

C.  Count III – Common-Law Indemnification: Awarding full indemnification for any sums Alliance-One is compelled to pay RGA;

D.  Count IV – Negligence: Awarding damages caused by PBI's negligent acts and omissions; and

E.  Awarding costs, reasonable attorneys' fees as permitted by law or contract, and

F.  granting such other and further relief as the Court deems just and proper.

**By:**    /s/   *George C. Springer, Jr.*
George C. Springer, Jr. [ct03263]
Austin  K.  Moran  [ct31252]
Rogin Nassau LLC
185 Asylum Street, 22nd Floor
Hartford,   CT   06103-3460
Tel: (860) 256-6350
Fax: (860) 278-2179
E-mail: gspringer@roginlaw.com
           amoran@roginlaw.com


Riccardo DeBari
Thompson Hine, LLP
300 Madison Avenue, 27th Fl. New
York, New York 10017
Tel: (212) 908-3975
Fax:(212)344-6101
E-mail:
Riccardo.DeBari@ThompsonHine.com

*Attorney for Defendant Alliance-One Services, Inc.*